Good morning, if it pleases the Court. There are two issues that I brought on appeal. One, a search issue, which I'm not going to address. And the other is the insufficiency of the evidence on all three counts, conspiracy possession of intent to distribute, conspiracy to possess with intent to distribute and distribution. The appellant contends that there was insufficient evidence under the standards that both parties agree on that the defendant, appellant Nieves-Cortez, knew that his co-defendant, his wife, was engaged in a drug transaction or had been for a long time, that he knowingly and intentionally assisted her in her drug transactions, and that he had either actual or constructive possession of the drugs that were seized on the day of his arrest on February the 25th of 2005. The standard is that taking the evidence in the most favorable light to the government and using all the inferences most favorable to the government, could any reasonable prior effect be convinced beyond a reasonable doubt of each and every element of all three offenses? And we believe that the answer to that is no. Looking at all of the evidence, both for this date and we can even look at all of the other dates in which the co-defendant participated in drug transactions, there is no evidence at any time, at any place, that the appellant ever witnessed drugs other than the fact that they were in a container in which the drugs were concealed, and the evidence is such that. Why is that so critical? Because if he is present and the drugs are inside a Clorox container, and the agents testify that the drugs could not be seen, a person would not know that the drugs were there unless they opened the bag, opened the container and looked in. If he is simply there and his wife is there on multiple occasions, there on locations, and the storage facility was rented in his name, is there any question but that you wouldn't be making this argument except there's some concern about the defendant's mental capabilities? Because lots of people get convicted because they're there time and time and time and time and time again, and there's rarely direct proof that each and every individual had his hands on drugs, but there's a James Bond novel that talks about once his happenstance, twice his coincidence, three times his enemy action. This guy was there dozens of times. So is there really a case but for the mental capacity issue? Yes. And I believe under the standards of the case law before the Ninth Circuit that the mental capacity issue, which may be an issue of innocence, is really not an argument that I'm going to be successful on. Well, I think that's right, which is why I pose the question I do, because is there any case law requirement of affirmative proof of this guy had his hands on the drugs or this guy affirmatively saw the drugs? I think what the case law would suggest is that there must be, when a person obviously we know that mere presence, a mere association is insufficient. Well, for instance, you know, we have cases where people are convicted, for instance, of driving a car across the border with the drugs hidden, you know, in some makeshift compartment, and the person says, I didn't know it was there, I'd never seen it. It's just all circumstantial, right, that that person is somehow connected to the drugs. And how is your case different? Well, I think, I mean, you're absolutely correct that there are numerous cases in which a person does not actually physically control the drugs. Or even see it, or claims never to. There's no proof that the person saw it, touched it, right, had any of that kind of physical connection with it. But I believe in almost every one, if not every one of those cases, there is something that the defendant does, and I think counsel for the government cited in his brief one of the cases, I can't remember the name, in which a passenger made a furtive movement as if she were concealing something under her legs. There is something in which a person is nervous. The driver is nervous. The driver is using a soon name. They turn around quickly. In every one of those cases, and I don't have every one in front of me, but there's numerous cases like that in this circuit and all other circuits, the person does something. Well, in this case, we have your client on multiple occasions in a car or truck while his wife is off doing something else and comes back. And maybe once that seems innocent, maybe twice, but after a while, doesn't that get to be a basis for suspicion in the same way that a furtive movement gets to be a basis for suspicion? My understanding of the evidence here is it's on the day of the arrest. Well, actually, Mr. Mendez says that he had about 72 transactions with the co-defendant. And the defendant was present in two of them, one waiting in the car, one in the house. I believe that there are three incidents in which the appellant is actually present during a drug transaction when the drugs are present. One is in the storage facility. Two is actually the time of the arrest. And three is in this incident sometime in the past, a few months before, when he was supposedly inside the Mendez residence. I think if you look at each one of the circumstances of those three cases, those three times and places, each one of them will show you that the appellant did nothing. He saw nothing. He didn't engage. He didn't talk. He didn't hear anything. The time of the rental of the storage facility is the most exemplary of this pattern in which his wife called the owner. They agreed to meet. The appellant drives up, sits in the truck, never moves. The owner has a conversation with the wife. They do a rental. The wife signs it in the appellant's name. The owner never talks to the appellant, who sits in the driver's seat, never budges, never does anything, and drives away. I think that's a pattern. The same thing with the day of the arrest, where the wife is clutching a sack to her chest. The sack has the drugs in it. You cannot see the drugs. She's clutching them. The Mendez has the money in a sack in which you cannot see. There is talk at the vehicle where Mendez is about the car, the damage of the car. They talk in coded language of drugs, a mixture, four for one, a yellow substance. And meanwhile, the defendant is going back to his van when the transaction actually occurs. There's not one attitude. There's not one conduct. What is he supposed to think is happening on all these occasions? What's the innocent explanation? Well, the innocent explanation is that he has an IQ of about 62. And as the doctor explained, he is not capable. He is in the lower 1% of all the human beings in the world. And he's not capable of picking out social situations and figuring them out. But, like I said, I'm not on good grounds when I talk about grounds for innocence. What I think, however, is, is that there's no evidence that he did anything that shows that he was aware, that he engaged. Same thing at the facility, earlier at the storage facility. The best that the government came up with is that he did something or they did something that appeared like they were putting something in the van. That's different from the witness saying he had something, it looked like he had something in his hand, he bent down. Those are actions. When you say somebody did something that appeared, you're just saying he did something that is similar. I don't believe when you say that you did something that is similar, you can say that that is circumstantial evidence that you did it. If you said that you looked like you had something in your hand, from that you can have you can make an inference that you did an action. Just saying something looks similar is not an action. Would you like to save a minute for rebuttal? Yes. Thank you very much. You got it. Thank you. Thank you. Good morning. May it please the Court, Byron Chapfield representing the United States. Let me focus in on the particular issues that counsel is talking about, and that really deals with viewing the particular evidence in the light most favorable to the government. What we really talk about, and I believe Your Honor talked about it in the sense, well, if you do it one time, but what happens when you do it a number of times? And what is the standard that we're supposed to look at, and that's evidence considered in light most favorable to the government, the prosecution? If we look at that particular evidence, and just to go right down the list of the favorable evidence for the government, we had Mendez who had purchased from the defendant's wife in his residence while the defendant was present. It's reasonable for a jury, a juror to conclude or to infer that the defendant is aware that this transaction is going on where there is an exchange of drugs for money. Later on, we have the defendant taking. Well, you may know. Anybody would be aware? Do you think, for instance, like a 12-year-old child would be aware? No, but this particular defendant would be, because then we get down to the issue about exactly what his mental capacity is. But let's talk about that transaction itself. The evidence was that this particular defendant delivered or took his wife on a number of these particular deliveries, and in this particular time, he came inside. Obviously, he did whatever his wife told him to do it. Would it amount to? He helped her a lot. Right. But, you know, does that necessarily mean he knew what was going on? Just because, you know, he was not too bright and his wife says, drive me to, you know, so-and-so, and he says, okay. And I don't think that you can just say whether you just isolated into one transaction did he know about that. No, even if he does it time and again, I mean, that's his job to help his wife. Apparently, as far as he knows. Apparently, he's not very bright, right? Well, let's look at it from the context of even the doctor that they called the psychologist. The question that was asked to him is, well, why are you testifying? What was the purpose of your evaluation? And that was to explain away why the defendant would be oblivious to things that were going on around him, and particularly as it relates to his wife dealing drugs. And he gave some explanation and tried to explain that away. It's apparent that what was going on with these various transactions, not only the one that we're talking about, the earlier one back three months earlier, but even later on, that somebody would be aware of it. And in this particular case, obviously, people, normal people would be aware of it. Now, the question is, is whether this particular defendant, because of his mental cognitive impairment that he had, whether he would be aware of it. Now, that's going to be a jury's decision as to exactly whether to accept that particular opinion. And they rejected that. And if we look at even some of the testimony of the doctor when he mentioned about that this particular defendant worked at a nursery and was a supervisor of a number of different people, people that have this particular condition have been involved in drugs and are aware of drugs being around them. Obviously, the jury rejected that particular opinion. That's their job and that's what their responsibility is. I think more importantly, though, when you talk about, well, was he aware of what was going on, would he be oblivious to those things that were going on around him? In this particular case, the defendant testified. The jury was able to observe him. They were able to listen to his testimony, evaluate what he had to say. And they obviously disbelieved his testimony. And that's the job of the jury. In addition to that, we also have the co-defendant, his wife, who testified and also got into other circumstances besides the storage unit, driving directly to the storage unit, directly to the place where the drug transaction occurred and the exchange. But in addition to that, she testified about the items that were seized at her residence. There's this issue that counsel is not talking about, that there are items that were eventually seized at the residence. But we're talking about over $13,000 cash in the bedroom, and we're talking about a married couple. It's not the fact that it is somebody that is merely an association with them. They know them. They don't live together, but they get together occasionally. Here we have a married couple in their bedroom, evidence about over $13,000 in cash, digital scales, a firearm. When you put that together with the fact that the storage unit was, in fact, the keys were in the defendant's possession and also his wife's possession, in addition to that, they were the defendant was observed entering into the storage shed with his wife was in there first. He went in. The officer observed that. Just a short time to come out, and counsel mentions about putting something in or appearing to put something in the van. What's important is the fact that he did see something that appeared to him that something was being put in the van. When the officers on the videotape, it shows the wife reaching back to the location where the item that appeared to be placed, she picked that up, and what was it? It ended up to be the sack with the methamphetamine in it. In addition to that, when the officers searched the van, they found additional methamphetamine in that same location. That's the one that was in the Clorox bottle? I'm sorry? That's the one that was in the Clorox bottle? That's correct. That's correct. Right behind the by the middle seat there, right behind it. That was the other item that was in there. Then if you look at what was in the storage unit itself, it wasn't the fact that it was a storage unit that somebody had a lot of things in. It was the defendant's pickup and his wife's pickup. There were some bags of clothing in the back of the pickup, but everything else, what was it? There was methamphetamine in the cab of the truck itself, the truck that belongs to both of them.   And there was methamphetamine in the cab of the truck itself, the truck that belongs to both of them. And it's all of that. And is there any evidence where they were getting the – where she was getting the – was there any evidence about where she was getting the methamphetamine? Who were her suppliers? Well, that was the question. They never did find out who the suppliers were. That did not come up. They knew that the fact that she was the one that was involved in distributing. They knew that the defendant was one that was driving her around numerous times. And it's reasonable for a jury to infer. Is it fair to say that then, you know, the government's position is that – well, as far as I can tell, I think I agree with Judge Clifton, the only real question here is the defendant's awareness of what was going on, you know, whether he was doing this knowingly. All right. So on that question, the government's position is that, well, a defendant put that issue into play, but it was fully vetted before the jury and the jury had a chance to not only hear that testimony, but to observe the defendant himself. It's a jury question and just simply the jury decided against him. And there's sufficient evidence to support whatever inferences the jury was required to draw. The first part is correct. We're really talking about the mental, whether the defendant knew that his wife was involved in this, in the drug transaction and whether he knew and intentionally helped her in the delivery of the drugs themselves. Yes, that is correct. The other aspect of it is that it is – becomes – part of it is a jury question as it relates to credibility of witnesses. It also is to be viewed in the light most favorable to the government. When we set all of those items out, can a reasonable jury – juror infer particular facts that the defendant knew that this particular defendant was assisting his wife in the delivery and distribution of methamphetamine? By driving the car, we're talking about him actively involved in doing that, besides what was there in the storage unit. And with that particular testimony and those circumstances, circumstantial evidence, we believe that that is sufficient evidence for the jury then to reach a conclusion that – and make that inference that she – that he knew about it. And that's it. Thank you. Thank you. Thank you for the question. Thank you. You have a minute. I think everything was pretty much explained on both sides, except for I didn't get the chance to get into the details of some of the actions. But I believe the principles of what I said before is that if you look at each one of them and you ask what did the defendant do or didn't do, what is absent on each and every one of the times in which he was present when drugs were present? He did nothing. He touched nothing. He saw nothing. Thank you. Thank you. The matter is submitted. Thank you, counsel. We appreciate your arguments. See, the next case that's on the calendar is Crampton v. Thomas, but that's been submitted on the briefs.
judges: Tashima, Paez, Clifton